UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
UNITED STATES OF AMERICA                13 cr 840-01 (AT)

-against-

MARCOS BURGOS-AVILES,

                        Defendant
------------------------------------------------------

## SENTENCING MEMORANDUM ON BEHALF OF THE DEFENDANT MARCOS BURGOS-AVILES

The government and the United States Office of Probation agree that the defendant meets the safety-valve criteria of 18 USC 3553 (f)(1)-(5). Accordingly, if the Court similarly agrees, the statutory mandatory minimum of ten years need not apply. We believe the court should find that Marcos Burgos-Aviles has met the conditions and criteria for the application of the safety valve.

### Corrections and/or explanations to the PSR.

Para 7-8.

    Burgos was not a party to any conversations about the importation of 4000 kilos of cocaine into the United States. His conversation was with C1 about C1's request whether Burgos would help him with 500 kilos to which Burgos replied he could do one or two kilos at a time. Burgos was not a party to any conversations

with the government informant referred to in para 7. The details referred to in para 8 were Burgos' statement that he could only do one or two kilos at a time. No cocaine was imported into the United States pursuant to this agreement between Burgos and C1.

Para 12.

None of the activity referred to in this paragraph was ever consummated.

Para 15.

Burgos' recollection of what he told the arresting agents was that he had discussed the 500 kilo deal proposed by C1.

Para 16.

We believe that Burgos should be sentenced with less reliance on the Guideline range by taking into account his actual drug dealing and not holding him responsible for 150 kilos or more.

Para 20.

Burgos' brother was shot at a mall not a nightclub.

Para 49.

Burgos is 5'11" not 5'1".

## **Sentence Recommendation.**

The Pre-sentence report (PSR) ordered for the Court recommends a term of 84 months imprisonment for Marcos Burgos-Aviles. We believe that given all the circumstances the Court should sentence him to no more than 46 months or less.

## **The plea agreement.**

As noted in the PSR the parties agreed in October 2014 to employ the November 2013 guidelines which were in force at the time of the agreement. The offense conduct was agreed to involve over 150 kilograms of cocaine. However, we wish to argue to the Court that this calculation, while technically valid, overstates his real ability to deal in more than 150 kilograms. He does not wish to avoid responsibility for what he did. But, the conversation between him and his coconspirator makes clear that Burgos had no ability to conduct a more than 150 kilogram transaction. The relevant conversation which technically puts his offense level at more than 150 kilograms has Burgos agreeing to import 500 kilograms into the U.S. "one or two kilos at a time". Burgos did not participate in the conversation alluded to in paragraph 7 of the PSR concerning 4000 kilograms of cocaine. He was called by one of the participants to that conversation in January 2013 and asked whether he could get 500 kilos into the U.S. and his answer was "one or two kilos at a time". He was not a part of a 4000 kilo transaction. And his proposal to

do one or two at a time wasn't taken up by his coconspirator.

Because Burgos is technically guilty of agreeing to import 500 kilos, while in reality being unable to perform his part of the agreement, we believe his offense conduct is overstated.

### **Burgos' actual cocaine dealing.**

As revealed from the information produced as a result of the government seizure of his Blackberry, Burgos' drug dealing was on a relatively small scale within Mexico and the drugs he helped distribute were not always destined for importation to the U.S.

Small quantities, 1-5 kilos, were actually cut and packaged by him for others who may have sold the drugs for export to the U.S. or for consumption in Mexico. He is responsible for actual distribution of no more than 50 kilos during the course of the conspiracy charged, January 2013 to October 2013, which he knew or should have known or realized by virtue of their wrapping were bound for export to the U.S. If the Court were to recognize actual conduct, his offense level would be 32 resulting in a recommended offense level of 27 after giving effect to the 2 and 3 point reductions for safety valve and acceptance of responsibility; a 70-87 month guideline range then would result. If then we similarly reduce that low end guideline range (70 months) by the same 24 month reduction in the PSR a sentence

of 46 months or less would be appropriate. Judge Gleason in United States v Diaz, 11-CR-00821-2 (E.D.N.Y. Jan., 28, 2013) cited statistics which showed average sentences in cocaine drug cases to be 34% below guidelines ranges. Applying that method to the 70 month lower end of the Guideline range produces a reduction of 24 months to a 46 month sentence.

The Court should make its final determination to meet the overarching instruction of 3553(a): to impose a sentence sufficient but no greater than necessary to accomplish the goals of sentencing. *Kimbrough v. United States, 552 US 85 (2007)*

**<u>The Factors in this case under 3553(a) which should determine the sentence.</u>**

Paragraphs 40 through 47 of the PSR disclose the family background, future stability and support from his wife, family, friends and associates which make it highly unlikely that Marcos Burgos will ever again engage in drug crimes. The many letter from his family, friends, former employer and teacher disclose a person
whose essential drive was not greed.

Burgos is 31 years old. His father died when he was 5. His mother worked to support the family of 4 children in various jobs which provided a stable family environment. He lost his brother who was a random victim of a shooting in Mexico. His other brother is a pilot and a business owner. His mother operates a

catalog business. His sister, although developmentally challenged does promotional work for modeling agencies.

Burgos has been supporting the 5 children of his deceased brother, contributing monthly for their support. He also helps to support his sister who ended an abusive marriage. He has helped his uncle with the costs of heart surgery in 2012 by contributing $12,000.00 toward the operation.

In 2007 he married his wife Yadira with whom he has raised two children. The oldest, Valentina, is suffering from separation from her father. Yadira works in her mothers hardware store and has made concrete plans to open businesses with the help of her mother and father from which she and her husband can support a stable family life without resort to illicit drug sales. Her mother and father are successful in business and will help with credit and experience to launch the Burgos' business.

He and Yadira have been active distributing food and toys to homeless children in Culiacan, Mexico since 2009. They also collected donations from others to help. (*United States v Adelson, 441 F. Supp 2d (SDNY )* charitable activity and good deeds are a proper consideration for a sentence below the guidelines.)

Yadira was interviewed by Probation and corroborated much of what Marcos

-7-

said. She promised future stability. She said she "does not want to relive this time in their lives". She foresees "positive changes" and is confident that her husband "will not risk it all again by repeating the same illicit actions". Marcos expressed his remorse and regret to her.

Burgos sold cars and decorated homes. He was not singularly involved in the drug trade. Marcos is remorseful, has accepted his responsibility and has strong and loving family support and opportunities for gainful employment. He has promised his wife not to engage in further criminal conduct. His rehabilitation will likely be successful. Imprisonment is not an appropriate means for promoting correction and rehabilitation. (See, 18 USC 3582)

## Other similar cases of safety valve sentences.

*United States v. Santano, No. 07-CR-874 (JBW), 2009 WL 1956227 (E.D.N.Y. July 6, 2009)*

Santano pled guilty to a narcotics offense. Although he did not initially qualify for safety valve relief, he ultimately did. His Guidelines range was determined to be 87 to 108 months imprisonment. He was ultimately sentenced, however, to 37 months imprisonment. He had the benefit of considerable support from his family who were prepared to move to a different community to assist in his rehabilitation.

His former employer indicated there would be a job waiting for him. The court

noted that he appeared capable of leading a productive law abiding life.

*United States v. Samuels, No. S1-08-Cr.-08-03 (RWS), 2009 WL 875320*

*(S.D.N.Y. April 2, 2009)*

Samuels pled guilty to conspiring to distribute and possess with intent to distribute 50 grams or more of crack. For that offense, she faced a 10 year mandatory minimum sentence (even though her Guidelines indicated 70 to 87 months imprisonment). Samuels, however, fulfilled the requirements of 18 U.S.C. § 3553(f), and was sentenced to time served (15 months). The Defendant was raised with an abusive father. She acknowledged responsibility and upon return to society appeared well positioned to pursue gainful employment in support of her family. A downward departure was appropriate because a term of incarceration beyond time already served would not serve the goals of the Penal system.

*United States v. Morales, No. 09-CR-617-03 (JBW), 2010 WL 3781017*

*(E.D.N.Y. Sept. 21, 2010)*

The defendant pled guilty to conspiring to import cocaine into the United States, for which he faced an advisory Guidelines range of imprisonment of between 37 and 46 months (inclusive of a four-point minimal role adjustment and a

three-point acceptance of responsibility adjustment).  The court sentenced him to five years probation.

## CONCLUSION

The cases cited above emphasize that real people are at the receiving end of sentences.  Incarceration is often necessary, but the punitive extra months and years the drug guidelines advise courts to use matter to the children who grow up without that parent; to loved ones who drift away; to employment opportunities which disappear; and to parents who die. Such guidelines, if they do not take account of empirical data and national experience, and do not exemplify the Commission's exercise of its characteristic institutional role, are generally entitled to less weight. See *Kimbrough, supra*. Sentencing judges may impose sentences that vary from the Guidelines based on their disagreement with the particular policy reflected in the Guidelines or based on the balance of 3553(a) factors. *Ibid.*, *Spears v. United States*, 555 U.S. 261 (2009); *Gall v. United States, 552 U.S. 38 (2007); United States v. Dovere*, 616 F. 3d 188 (2d Cir. 2010).

"A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy." See Justice Kennedy, Speech to ABA 2003.

We urge the court to consider the 3553(a) factors in favor of Marcos Burgos and impose a sentence no more than 46 months or less. A sentence

of no more than 46 months or less will be sufficient but no greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

\_\_\_S/_____
George L. Santangelo, and
Edward S. Panzer
Attorneys for Marcos Burgos-Aviles