UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                   :

UNITED STATES OF AMERICA

                                   :

    - v -                              :                    13 Cr. 840 (AT)

                                   :

MARCOS BURGOS-AVILES,

                                   :

                Defendant.

                                   :
------------------------------------------------------x

## SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the Southern
District of New York
*Attorney for United States of
America*

Shane T. Stansbury
Ian McGinley
Assistant United States Attorneys
 –   Of Counsel –



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 13, 2015

**BY ECF**

The Honorable Analisa Torres
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007
E-mail: torres_nysdchambers@nysd.uscourts.gov

> Re:   **United States v. Marcos Burgos-Aviles, 13 Cr. 840 (AT)**

Dear Judge Torres:

The Government respectfully submits this letter in advance of the sentencing scheduled for April 17, 2015, and in response to the defendant's sentencing submission dated April 6, 2015 ("Def. Mem."). For the reasons set forth below, the Government submits that a sentence within the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 108 to 135 months' imprisonment is appropriate.

<u>The Defendant's Guilty Plea And The Applicable Guidelines Range</u>

Indictment 13 Cr. 840 (AT) (the "Indictment") charged the defendant in one count with conspiring to distribute five kilograms and more of cocaine, intending and knowing that the cocaine would be imported into the United States, in violation of Title 21, United States Code, Sections 959, 960(b)(1)(B) and 963. On November 5, 2014, the defendant pleaded guilty to the sole count of the Indictment pursuant to a plea agreement (the "Plea Agreement"). Under that agreement, which was based on the Guidelines applicable at that time, the parties stipulated that the applicable Guidelines range was 135 to 168 months' imprisonment. However, the parties also agreed, in light of anticipated amendments to the Guidelines, that the defendant should be sentenced as though the applicable Guidelines range is 108 to 135 months' imprisonment.

In light of the terms specified in the Plea Agreement, the Government agrees with the United States Probation Office (the "Probation Office") that the defendant should receive the benefit of the most recent amendments to the Guidelines provisions applicable to narcotics offenses, and that the applicable Guidelines range, in light of those amendments, is 108 to 135 months' imprisonment. As set forth in the Probation Office's Presentence Investigation Report

("Presentence Report" or "PSR"), that calculation is based on (1) a base offense level of 36, pursuant to U.S.S.G. § 2D1.1; (2) a two-level reduction in the offense level, given the defendant's eligibility for so-called "safety-valve" relief, pursuant to U.S.S.G. § 2D1.1(b)(17); (3) a three-level reduction in the offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1; and (4) a Criminal History Category of I.  (*See* PSR ¶¶ 22-35, 66).

Notwithstanding the Plea Agreement and his guilty plea allocution before this Court, the defendant—while acknowledging that the applicable Guidelines range of 108-135 months' imprisonment is "technically valid," (Def. Mem. at 3)—now proposes that the Court sentence him as if a completely different Guidelines range were applicable.  The defendant, for the first time, has proposed a set of calculations that find no basis in the Plea Agreement, the defendant's guilty plea allocution, or the offense conduct.  Specifically, the defendant suggests that if the Court were to recognize his "actual conduct," the Guidelines would result in an applicable base offense level of 32 (corresponding to an offense involving at least 15 kilograms but less than 50 kilograms of cocaine), yielding, with applicable reductions for safety-valve relief and acceptance of responsibility, a Guidelines range of 70 to 87 months' imprisonment.  (Def. Mem. at 4-5).

The Government respectfully submits that the Court should not entertain the defendant's proposal.  Apart from raising questions about the defendant's actual acceptance of responsibility for his conduct, the defendant's proposal seeks an end-run around the actual Guidelines range to be considered by the Court, which, as agreed to by the parties, is indisputably 108 to 135 months' imprisonment.[1]

The defendant's contention that a hypothetical Guidelines range of 70-87 months' imprisonment more accurately reflects his "actual conduct" is simply not accurate.  The defendant asserts that, although he was "technically guilty of agreeing to import 500 kilos," he was prepared to transport only one or two kilograms at a time and was "in reality . . . unable to perform his part of the agreement." (Def. Mem. at 3-4).  The defendant also contends that his "actual conduct" (*i.e.,* the drug trafficking that was actually consummated) involved "small quantities" of 1 to 5 kilograms of cocaine, which the defendant "actually cut and packaged." (*Id*.)  These assertions are based on a fundamental misunderstanding of the facts relevant for determining the applicable Guidelines range (and an appropriate sentence under 18 U.S.C. § 3553(a)), as well as a misunderstanding of the defendant's actual conduct.

First, the defendant's emphasis on the quantities of cocaine that the defendant actually distributed (or "actually cut and packaged") applies the wrong metric.  The defendant pleaded guilty to a conspiracy charge, not a substantive charge.  The relevant conduct to be taken into account, both under the Guidelines and under 18 U.S.C. § 3553(a), is therefore the amount of cocaine that the defendant and his coconspirators conspired to distribute, knowing that such cocaine would be imported into the United States.  *See* U.S.S.G. § 1B1.3 (defining "relevant conduct," in the context of a "jointly undertaken criminal activity," as "all reasonably

---

[1] Indeed, absent the stipulation in the Plea Agreement, the defendant would, in the Government's view, be accountable for well over 500 kilograms of cocaine, corresponding to an offense level of 38 and a resulting Guidelines range of 135 to 168 month's imprisonment.

foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

As the defendant concedes, and as he acknowledged in his guilty plea allocution, the defendant (as part of one of many narcotics transactions) agreed to transport 500 kilograms of cocaine from Mexico to the United States.[2] (*See* Nov. 4, 2014 Plea Tr. at 22-23). Although the defendant states that he intended to move only small quantities of that cocaine at a time (Def. Mem. at 3), the defendant's assertion that he would be unable to perform his part of the agreement has no basis in the record. Moreover, whether the defendant intended to transport the cocaine in small or large quantities, and whether the defendant would actually have succeeded in transporting all of the cocaine he agreed to distribute, are simply not material to the ultimate inquiry of how much cocaine was involved in the offense. The defendant agreed with others to import into the United States hundreds of kilograms of cocaine and provided every indication to his coconspirators that he would work to achieve that goal. The applicable offense level, and the resulting Guidelines range, appropriately reflect that fact.[3]

Second, the defendant's suggestion that, apart from the transaction above, he was only involved in the "actual distribution" of "small quantities (1-5 kilos)" totaling "no more than 50 kilos during the course of the conspiracy" (Def. Mem. at 4) is not accurate. In connection with his attempt to qualify for safety-valve relief, the defendant attended a series of proffers with the Government, in which he acknowledged distributing much larger quantities of cocaine that he believed would be imported into the United States. Specifically, the defendant acknowledged working with numerous other coconspirators to distribute well in excess of 10 kilograms of cocaine at a time, and stated that he had distributed up to 50 kilograms at one time. Although the Government does not believe that there is any factual dispute that needs to be resolved prior to sentencing, given the parties' stipulation to the applicable Guidelines range, the defendant's own prior statements belie his claim that he was responsible for actually distributing a relatively small quantity of cocaine.

---

[2] The defendant's assertion that he was "not a part of a 4000 kilo transaction" (Def. Mem. at 3) is simply not accurate. The 500 kilograms of cocaine to be imported into the United States was part of the 4,000 kilogram transaction originally discussed by the defendant's coconspirators. (PSR ¶ 7). The defendant may contend that he did not participate in the discussions relating to the larger 4,000 kilogram transaction, and therefore was not aware of that larger quantity, but that is of no moment for purposes of sentencing. The Government does not contend that the defendant should be held accountable for the entire 4,000 kilograms of cocaine that was discussed; rather, he should be held accountable for all relevant conduct, which includes (but is not limited to) the 500 kilograms of cocaine that was to be imported into the United States as part of the 4,000-kilogram transaction.

[3] Although the defendant suggests that the movement of small quantities of cocaine at a time suggests that he was a small-scale distributor, the investigation in this case has revealed that, in fact, it is quite common for traffickers seeking to transport large quantities of narcotics to divide these quantities into smaller batches of cocaine for movement across the U.S.-Mexico border so as to avoid detection by law enforcement.

The defendant's regular involvement in the distribution of cocaine into the United States is confirmed by the numerous communications between the defendant and his coconspirators during the course of the conspiracy. As indicated in the Presentence Report (and as discussed further below), the defendant communicated almost daily with other individuals about possible or consummated drug transactions. (PSR ¶ 13). Although those communications did not always mention the United States, some of the communications were quite explicit about the fact that the narcotics were being imported into the United States. (*See* PSR ¶¶ 10-11). Moreover, the defendant acknowledged in his safety-valve proffers that he was aware that even the narcotics he was distributing in Mexico would very likely ultimately be imported into the United States.

In sum, the Guidelines range applicable to the defendant's offense is 108 to 135 months' imprisonment, not the defendant's hypothetical range of 70 to 87 months' imprisonment. The applicable range is supported by the Plea Agreement, the defendant's guilty plea allocution, and the undisputed evidence. The Court should reject the defendant's invitation to sentence him as if a lower Guidelines range applied.

<u>A Sentence Within The Applicable Guidelines Range Is Appropriate</u>

A sentence within the applicable Guidelines range of 108 to 135 months' imprisonment would be sufficient but not greater than necessary to achieve the sentencing objectives enumerated in Title 18, United States Code, Section 3553(a). Specifically, such a sentence would be appropriate given (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(C).

The seriousness of the offense warrants a substantial sentence. The defendant is responsible for conspiring to import literally hundreds of kilograms of cocaine into the United States over a substantial period of time. The sheer quantity of the cocaine involved in this case demonstrates the gravity of the defendant's conduct. It is also reflective of the defendant's level of sophistication. Notwithstanding the defendant's attempt to label himself as a "small-scale" drug dealer (Def. Mem. at 4), he was confident enough in his connections and his know-how to commit to transporting a half-ton of cocaine into the United States.

The nature of the defendant's conduct also warrants a substantial sentence. The defendant not only conspired with others by promising to act as a transporter of hundreds of kilograms of narcotics, but also by regularly putting "cut" into the kilograms of cocaine and helping to stamp them to demonstrate their origin. (PSR ¶ 14). The defendant engaged in this conduct with numerous coconspirators. These actions show that the defendant was no mere street dealer or occasional seller, but rather a seasoned drug trafficker well-versed in the transportation and preparation of narcotics for distribution.

The seriousness of the defendant's conduct is also reflected in its regularity. The defendant's arrest was part of a long-term investigation into individuals affiliated with the Sinaloa Cartel (the "Cartel"), one of Mexico's most notorious drug-trafficking organizations. As

part of that investigation, the defendant was identified as an individual who organized the transportation of cocaine for the Cartel.  (*See* PSR ¶ 7).  In March 2013, agents obtained a series of court orders to intercept communications between the defendant and other coconspirators believed to be affiliated with the Cartel.  (*Id.* ¶ 9).  Those interceptions were renewed on numerous occasions, and continued until the defendant's arrest in October 2013.

Throughout the period in which the defendant's communications were intercepted, the defendant communicated almost daily with coconspirators about actual or proposed drug transactions.  (*Id.* ¶ 13).  Although not all of those communications specifically referenced the United States,[4] it is telling that narcotics trafficking amounted to what appears to have been a full-time job for the defendant.  Indeed, based on the Government's experience, the defendant's communications stood out from most other Title III-based investigations, given the sheer volume and regularity of communications mentioning drug trafficking.

A small sample of the communications are provided in the Presentence Report, but those communications represent but the smallest fraction of communications intercepted over the better part of eight months, many of which show the defendant to be a committed drug trafficker operating on a substantial scale.  To take but one other example, on or about September 26, 2013, the defendant communicated with another coconspirator, who is believed to have been located near the U.S.-Mexico border.  In the communication, the defendant passed the coconspirator a long list of narcotics (believed to refer to cocaine of various types and quality) and prices.  The message listed, among other things that "16 powder" at "$17,000" (*i.e.*, 16 kilograms of powder cocaine, at $17,000 per kilogram), for a total of "$272,000;" "10 doves" (*i.e.*, 10 kilograms of cocaine stamped with doves) at "$17,000," for a total of "$170,000;" "12 good ones" (*i.e.*, 12 kilograms of cocaine of higher quality) at "$18,000" for a total of "$216,000;" "10 good ones" at "$18,000" for a total of "$180,000;" and "20 good ones" at "$17,500" for a total of "$350,000."   The message continued:  "[T]otal $1,188,000 Partial payments $175,800, $111,000, $100,000, $88,000, $100,000, $165,000 total $739,800 with balance of $448,200."

This single example, which is believed to discuss the sale of approximately 68 kilograms of cocaine worth more than $1 million, demonstrates the level at which the defendant was operating.  The defendant was no mere "small scale" drug dealer, as suggested in his sentencing submission.  (Def. Mem. at 4).  Rather, the defendant was a regular, and rather sophisticated, trafficker of narcotics with an extensive network of individuals with ties to the Sinaloa Cartel, both in Mexico and in the United States.

The defendant's regular engagement in narcotics trafficking also demonstrates that a substantial sentence is needed to deter the defendant from engaging from narcotics trafficking in the future, and to protect the public from future crimes by the defendant.  *See* 18 U.S.C. § 3553(a)(2)(B), (C).  Although the defendant contends that he will cease to engage in illegal activity, the defendant's past actions speak louder than any promise he is now making.  For the

---

[4] Like most experienced narcotics traffickers, the defendant and his coconspirators primarily spoke in code, and did not reference specific locations or actual names of individuals, when negotiating narcotics transactions.

relatively short period of time in which the Government was able to witness the defendant's communications, he demonstrated an unyielding commitment to narcotics trafficking.  Had the DEA not intervened, there is no indication that the defendant would have ceased to conspire with others to import cocaine into the United States.  In light of this history, a substantial sentence would help deter the defendant from engaging in such activity in the future.  It would also send an appropriate message to others, including to the defendant's coconspirators, many of whom are believed to still be affiliated with, and working with, the Sinaloa Cartel.

<u>A Substantial Sentence Would Be Consistent With Sentences<br>Imposed In Comparable Cases</u>

A substantial sentence would also be consistent with other sentences in this District in which substantial quantities of cocaine were involved.  For example:

- In *United States* v. *Victor Barcelo*, 13 Cr. 38 (RJS), the defendant was convicted at trial of conspiring to distribute cocaine, in violation of Title 21, United States Code, Section 846.  The evidence at trial established that the defendant was responsible for distributing more than 150 kilograms of cocaine during the course of his participation in the narcotics conspiracy.   Specifically, the evidence showed that, the defendant and another coconspirator, both of whom were truck drivers, made four trips from Southern California to New Jersey in which they transported between approximately 50 and 100 kilograms of cocaine at a time, as well as several million dollars in drug proceeds.  The defendant, who had a Criminal History Category of I, was sentenced to 168 months' imprisonment.

- In *United States* v. *Rawson Watson*, 12 Cr. 120 (RJS), the defendant was convicted following a guilty plea of conspiring to distribute five kilograms and more of cocaine on board a U.S.-registered aircraft, in violation of Title 21, United States Code, Sections 959(b), 960(b)(1)(B)(ii), and 963.  The defendant was responsible for assisting in the attempted transportation of approximately 1,000 kilograms of cocaine from the Dominican Republic to Belgium.  The defendant, who had a Criminal History Category of I,[5] was sentenced to 204 months' imprisonment.

- In *United States* v. *Miguel Antonio Pereira Celemin*, 08 Cr. 165 (PGG), the defendant was convicted following a guilty plea of conspiring to import five kilograms and more of cocaine, in violation of Title 21, United States Code, Sections 952, 960(b)(1)(B)(ii), and 963, and conspiring to launder narcotics proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I) and (h).  The defendant, along with his brother, was responsible for the procurement of loads of cocaine from manufacturers in Colombia and the shipment of cocaine into Venezuela, where the cocaine was loaded onto "go-fast" boats directed to transshipment destinations in the Caribbean, primarily in the Dominican Republic.  During the investigation, Colombian authorities seized a shipment containing

---

[5] Although the defendant had a Criminal History Category of I, he had previously been convicted of several offenses in foreign countries, including attempted theft of approximately $300,000 in foreign currency.

220 kilograms of cocaine that had been assembled by the defendant and his coconspirators. The defendant, who was safety-valve eligible and had a Criminal History Category of I, was sentenced to 152 months' imprisonment.

- In *United States* v. *Chidi Ezeobi*, 10 Cr. 669 (DLC), the defendant was convicted at trial of one count of conspiring to distribute and possess with the intent to distribute at least five kilograms of cocaine, in violation of Title 21, United States Code, Section 846, and one count of conspiring to export at least five kilograms of cocaine from the United States, in violation of Title 21, United States Code, Section 963. Both counts related to the defendant's efforts to organize a planned export of approximately 33 kilograms of cocaine hidden in a suitcase from Houston, Texas to London, England. The defendant, who had a Criminal History Category of I, was sentenced to 154 months' imprisonment.

The cases the defendant cites where substantial variances have been granted are unpersuasive. In both *United States* v. *Santano*, No. 07-CR-874 (JBW), 2009 WL 1956227 (E.D.N.Y. July 6, 2009) and *United States* v. *Samuels*, No. S1 08 Cr. 08-03 (RWS), 2009 WL 875320 (S.D.N.Y. April 2, 2009), the defendants were convicted of conspiring to distribute and possess with intent to distribute fifty grams or more of cocaine base. Unlike here, the defendants were street-level "crack" cocaine dealers, responsible for distributing a limited quantity of narcotics, as opposed to engaging in a conspiracy to import, across international borders, large-quantities of cocaine for distribution. It is also notable that the defendants were sentenced for distributing crack cocaine, as opposed to powder cocaine. In *Santano*, when sentencing the defendant to 37 months' imprisonment, Judge Weinstein took specific note of the disparity between the Guidelines offense level for cocaine base and the Guidelines offense level for powder cocaine—a fact that is not implicated here. 2009 WL 1956227, at *3.

Likewise, in *United States* v. *Morales*, No. 09-CR-617-03 (JBW), 2010 WL 3781017 (E.D.N.Y. Sept. 21, 2010), the defendant was a low-level courier arrested at JFK Airport after transporting less than two kilograms of cocaine inside a suitcase. The defendant's minimal participation in the conspiracy was accounted for in a four-point minimal role adjustment—the most extreme mitigating role adjustment under the Guidelines. *See* U.S.S.G. § 3B1.2(a). That case is a far cry from the case here, where the defendant agreed to control and arrange the importation of a half-ton of cocaine into the United States and engaged in narcotics trafficking on a virtually full-time basis.

For the same reasons, the defendant's citation to Judge Gleason's opinion in U*nited States* v. *Diaz*, No. 11-cr-00821-2, 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013), rings hollow. The defendant's conduct stands in stark contrast to the conduct of the defendant in that case, who was a street-level facilitator engaged in a transaction involving one gram of heroin (as opposed to hundreds of kilograms of cocaine) and who, absent safety-valve relief, was subject to a ten-year mandatory minimum sentence and a Guidelines range (prior to any adjustments) of 121 to 151 months' imprisonment. 2013 WL 322243, at *2. The defendant's conduct is also in no way similar to the broader category of "low-level dealer[s] or courier[s]" who were the primary focus of Judge Gleason's opinion. *See id.* at *13.

\* \* \*

Page 8

For all of the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 108 to 135 months' imprisonment, as such a sentence would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      /s/  Shane T. Stansbury
Shane T. Stansbury/Ian McGinley
Assistant United States Attorneys
(212) 637-2641/2257

cc: Counsel of Record (via ECF and E-mail)